IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CT-3152-H

STUART WAYNE TOMPKINS, )
)
Plaintiff, )
)
v. ) **ORDER**
)
DEPARTMENT OF CORRECTION, et al., )
)
Defendants. )

Stuart Wayne Tompkins, a state inmate, filed this action alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is before the court for a frivolity review under 28 U.S.C. § 1915 (e) (2). Also before the court are Plaintiff's Motion to Amend, Motions for Appointment of Counsel, Motion for a Temporary Restraining Order/Motion for a Preliminary Injunction, Motion for the Production of Documents, Motion for Default Judgment, Motion for Order, Motion to Compel Discovery, and Motion in Limine. Each of these matters will be addressed below.

I.

A.

A claim having no arguable basis in law or in fact may be dismissed as frivolous. Neitzke v. Williams, 490 U.S. 319, 325 (1989). More specifically, in reviewing the complaint, a court "shall dismiss" any case that is "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that 'seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In addition to the Department of Corrections (named as a Defendant in the caption), Plaintiff

brings this action against Johnston Correctional Institution ("Johnston") employees T. R. Carroll, Superintendent; Chris Batten, Programs Director I; John Doe Herring, Sergeant; John Doe Vinson, Lieutenant; John Doe Webster, Lieutenant; John Doe Stewart, Mailroom Official; John Doe Diggs, Sergeant; John Doe Crumpler, Lieutenant; and John Doe Thompson, Captain. Plaintiff also names as Defendants Mountain View Correctional Institution ("Mountain View") employees David Mitchell, Superintendent; Susan Bell, Mailroom Supervisor; John Doe and Jane Doe mailroom employees; John Garland, Correctional Officer; Victoria Sellers, Sergeant; Kevin B. Benfield, Unit Manager; Edward K. Osteen, DHO Hearing Officer; John Doe, Correctional Officer; and David Stamey, Correctional Officer. Plaintiff names Eastern Correctional Institution ("Eastern") employees Stephen E. Dunn, Unit Manager; Johnny W. Taylor, III, DHO Hearing Officer; and Carol O'Konek-Smith, former Superintendent. In addition Plaintiff names Hattie B. Pimpong, Chief Disciplinary Hearing Officer; Theodis Beck, Secretary of Prisons; and Boyd Bennett, Director of Prisons. In the volumes of paper Plaintiff has filed with the court, he states that he has eight (8) claims concerning alleged violations of his constitutional rights while he was housed at Eastern, Johnston, and Mountain View.

B.

### (1) Retaliatory Transfer

Plaintiff brings his first claim against Defendants Batten, Carroll, Herring, Vinson, Weber, Thompson, Diggs, and Mitchell. Plaintiff claims he was transferred in retaliation for filing a grievance against Defendant Herring on November 6, 2006, concerning discrimination in housing. He claims he also filed complaints and made verbal complaints against Defendants Thompson, Vinson, and Webster concerning Herrings discrimination in housing. Plaintiff claims that Defendant

2

Crumpler was involved in the retaliation because Plaintiff complained to Defendant Carroll about Crumpler. He alleged that Crumpler discriminated in housing Plaintiff after Plaintiff helped another inmate write a grievance against Crumpler for cursing the other inmate. He claims these complaints were made between November 26, 2006 and January 2007. Plaintiff was then transferred on January 16, 2007. Plaintiff states that he was told he was transferred for medical reasons, only to learn that there were no medical reasons. In his grievance form, taken from a previously filed case, Tompkins v. United States District Court, No. 5:07-CT-3049-BO (E.D.N.C., dismissed 4/23/07), Plaintiff raised this issue stating that he was transferred because he filed grievances and complaints to the Secretary of Correction. In Step Two of the response, Plaintiff was told that "[c]omments indicate that you were shipped for duty and indicate special medical needs." Plaintiff also was correctly informed that inmates can be shipped to different facilities at any time at the discretion of prison officials.

To state a valid claim of retaliatory transfer, the inmate must show that he was transferred in response to the exercise of some constitutionally protected right or that the act itself violated such a right. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). The Fourth Circuit has held that claims of retaliation should be treated with skepticism. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). Plaintiff claims he was transferred because he wrote a grievance and complained about discrimination in housing. The record shows that Plaintiff filed a grievance on November 26, 2006 claiming that Defendant Herring was responsible for moving him to another dorm and that he was being harassed and discriminated against.

Prisoners do not have a constitutional right not to be transferred from one facility to another. See O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991). In addition, there is no constitutional right to

3

participate in grievance proceedings. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Failure to show that the alleged retaliation had an adverse impact on the exercise of a constitutional right defeats the claim. See American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993).

Plaintiff has failed to show that his grievance against Defendant Herring was in any way responsible for his transfer to Mountain View. Moreover, he has not demonstrated that the alleged retaliatory transfer had an adverse impact on the exercise of his constitutional rights. Plaintiff continues to file numerous documents in this case, and has filed at least one other case. In addition, he has filed other grievances and complaints since he was transferred to Mountain View. Plaintiff complains that he was transferred to a higher security prison. He also states that at Mountain View there are double cells, inadequate heat, less freedom of mobility, and failure to respond to unspecified requests. He further states that the food is "poor" and has resulted in his losing weight. None of these claims show conditions that amount to atypical and significant hardship in violation of Plaintiff's due process. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Nor, has he demonstrated the deprivation of a basic human need. See Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). For the foregoing reasons, Plaintiff's claim of retaliatory transfer is DISMISSED as frivolous.

### (2) Intentional Opening of "Privileged" Mail

Plaintiff claims that Defendants Mitchell, John Doe, Jane Doe, and Susan Bell intentionally opened two pieces of "privileged" mail out of his presence on the same day. He claims this was done without "warrant" in violation of his First and Fourth Amendment rights, as well as his Fourteenth Amendment Due Process rights. Plaintiff states that he received mail from the

4

"Department of State in Washington, D.C. which is the Office of Civil Rights" that was opened out of his presence on May 21, 2007. In response to Plaintiff's grievance regarding the opening of his mail, it is stated that Defendant Bell acknowledged that legal mail is to be opened in the presence of inmates, but that mistakes sometime occur due to the volume of mail handled by the prison mailroom.

Inmates retain the right of reasonable access to the courts and to communicate with attorneys. Ex Parte Hull, 312 U.S. 546, 549 (1941). Prison officials may open mail from an attorney to the prisoner in the presence of the prisoner to protect against contraband. See Wolff v. McDonnell, 418 U.S. 539, 577 (1974); Crowe v. Leeke, 550 F.2d 184, 188 (4th Cir. 1977). Defendant Bell's response to Plaintiff's grievance indicates that the opening of these two pieces of mail on the same day amounted to nothing more than negligence which is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 333-34 (1986); Pink v. Lester, 52 F.3d 73, 75076 (4th Cir. 1995). Moreover, Plaintiff has not shown that he suffered any adverse consequence based on the alleged opening of these two letters. White v. White, 886 F.2d 721, 724 (4th Cir. 1989). Therefore, the court concludes that the opening of these two letters fails to rise to the level of a constitutionally significant violation of Plaintiff's rights and is DISMISSED as frivolous.

To the extent Plaintiff is alleging a denial of access to the courts, this claim is without merit. Court records show that Plaintiff filed five cases in this court in 2006 and 2007. In addition, he has filed numerous documents in the current case. These facts undermine any claim of denial of access to the courts, where Plaintiff cannot show his efforts to pursue his legal claims has been hindered. See Lewis v. Casey, 518 U.S. 343, 351-52 (1996). Therefore, a claim of denial of access to the courts is DISMISSED as frivolous.

### (3) **Intentional Discrimination in Discipline and Disciplinary Action**

Plaintiff alleges Defendants Mitchell, Benfield, Osteen and Seller's intentionally discriminated against him when he was disciplined for misuse of the mail. This claim arises from a search of inmate Brian Lewis's cell on May 4, 2007 conducted by Defendant Garland. During the search, Defendant Garland found a sealed envelope and asked Lewis about its contents. Lewis informed Defendant Garland that it was legal mail belonging to Plaintiff. Both Lewis and Plaintiff were written up for misuse of the mail. The disciplinary charges against Lewis were dismissed, but those against Plaintiff were not. Plaintiff was found guilty and sentenced to 20 days punitive segregation. Plaintiff claims he was treated differently than Lewis when the circumstances were similar.

Prisoners cannot be subjected to arbitrary punishment by prison officials. Howard v. Smyth, 365 F.2d 428, 431 (4th Cir. 1966). The Equal Protection Clause of the Fourteenth Amendment commands that all person similarly situated should be treated alike. Plyler v. Doe, 457 U.S. 202, 216 (1982). Here, however, the facts make it clear that Plaintiff and Lewis were not similarly situated. It was Plaintiff's mail that was found in Lewis's cell. Plaintiff acknowledges that he has attempted to circumvent prison regulations by having other inmates send mail for him. See Comp'l 21, ¶ 73. Although Lewis may have violated prison regulations by having the mail in his cell, there is no evidence showing that he was trying to circumvent the rules for his own benefit, as it is evident that Plaintiff was attempting to do. Plaintiff cannot break prison rules, then complain because he was disciplined for doing so or seek intervention by the court by attempting to conjure up some constitutional violation because he is punished for his wrong doing. In this case, Plaintiff acknowledges that there was evidence to support his being disciplined. Moreover, the discipline did

6

not violate any liberty interest. See Sandin, 515 U.S. at 483-84. For these reason, Plaintiff's claim of discrimination in discipline is DISMISSED as frivolous.

### (4) Filing Fabricated Report in Disciplinary Action

Plaintiff alleges Defendants Benfield, Garland, Sellers, and Mitchell are liable for filing a fabricated report in a disciplinary action to conceal Defendant Garland's violation of opening Plaintiff's legal mail out of his presence and reading the legal mail which criticized the prison system. Plaintiff states that he was written up and sentenced to segregation, causing him emotional injuries.

This claim is related to the previous one in which Defendant Garland searched inmate Lewis's cell. Plaintiff claims Garland filed a fabricated report to conceal his violation of opening a sealed legal letter, belonging to Plaintiff, during the cell search on May 4, 2007. It is questionable whether Plaintiff has standing to challenge prison officials' search of another inmate's cell. Even so, it is clear that the letter in question was neither in the incoming nor outgoing mail, but was contraband found in Lewis's cell during a cell search. See Department of Correction General Regulations Governing the Supervision and Conduct of Inmates, Rule 1. Inmate Property and Inmate Trust fund - Personal Property (October 2007). There is no evidence that Lewis had authorization to have Plaintiff's mail in his room. Again, as stated above, Plaintiff cannot attempt invoke the protection of the constitution and the court where his actions are clearly in violation of prison rules. This is an instance where prison officials must be permitted to exercise discretion for the purpose of maintaining order and security in the prison within the bounds of constitutional requirements. See Lewis v. Casey, 518 U.S. at 363. Further, Plaintiff's claim that the Defendants did not have a warrant to read his mail is meritless. As stated, the mail was contraband found in Lewis's cell and the

protections of the Fourth Amendment do not extend to cell searches or the possessions therein. See Hudson v. Palmer, 468 U.S. 517, 525-26 (1984). Therefore, Plaintiff's claim that Garland filed a fabricated report and the other Defendants upheld it is DISMISSED as frivolous.

### (5) Deprived of Freedom of Speech

Plaintiff claims that Defendants Mitchell, John Doe, Jane Doe, and Bell deprived him of Freedom of Speech "with family, friends, courts, legal organization, and a disciplinary appeal in the prison system and caused [him] emotional injuries when [he] is unable to have any relationship with his family and friends." He further states that Defendants interfered with his "privileged" mail to the courts in a pending lawsuit and post-conviction by not sending of delivering the mail. He claims his First and Fourteenth Amendment rights were violated.

Plaintiff states he sent letters to his sons, his aunt, and to friends which Defendant Mitchell has refused to mail. He states that he received a memorandum from Defendant Mitchell on June 6, 2007, informing Plaintiff that he was not to communicate in writing, by telephone, via third party or in any form with Plaintiff's brother Carl Tompkins or anyone at their residence. Plaintiff also states that he has been denied any communication with his sons. Accepting Plaintiff's statement of these facts as true, the complete denial of communication with his brother or his sons may give rise to a constitutional violation. Therefore, these claims against Defendant Mitchell is not clearly frivolous. See Turner v. Safely, 482 U.S. 78 (1987).

Plaintiff states that he has requested approval to correspond with other inmates concerning legal matters, but Defendant Mitchell had not responded to his request when he filed this action. Plaintiff does not state that Defendant Mitchell denied his request to correspond with other inmates. Even is Plaintiff's request is denied, however, such a restriction may be "reasonably related" to

prison security concerns and therefore not violate Plaintiff's constitutional rights. See Id.; see also Jones v. North Carolina Prisoners' Union, 433 U.S. 119 (1977). In addition, when reading the grievance response concerning the issue of Plaintiff's request to Defendant Mitchell for inmate-to-inmate correspondence, it appears Plaintiff has failed to follow the correct procedure. It states that Plaintiff has to first submit his request to his case manager. Plaintiff has not shown that he followed proper procedure. For these reasons, this claim regarding inmate-to-inmate correspondence is DISMISSED as frivolous.

Plaintiff states generally, that he has been denied communication with his friend, Garland Lail, a former inmate who was Plaintiff's cellmate at some point during his incarceration. Plaintiff states that the last letter he received from Lail was in March 6, 2007. This claim is conclusory. Plaintiff has failed to establish any factual basis to show that prison officials have with held either incoming or out going mail to Lail, thus denying him freedom of speech. See White v. White, 886 F.2d 721, 724 (4th Cir, 1989).

Plaintiff states that he did not receive mail from the federal court; that he has not received any response from the Industrial Commission concerning his pending tort claim; and he has been denied correspondence in the prison system where he placed an appeal to disciplinary action in mailbox on May 15, 2007. Again, these claims are conclusory and Plaintiff offers no facts to show that prison officials played any role in his failure to receive correspondence in these instances. See Id. Therefore, these claims are DISMISSED as frivolous.

Plaintiff's claim that he wrote Defendant Beck concerning his "privilege[d] and non-privilege[d] mail, but Beck is deliberately indifferent because he has failed to respond. The doctrine of respondeat superior is inapplicable to claims filed under 42 U.S.C. § 1983. Monell v. Dept. of

Social Services, 436 U.S. 658, 694 (1978). A higher official may be liable if there exists an affirmative causal link between the official's inaction and the alleged constitutional injury. See Carter v. Morris, 164 F.3d 215, 220 (4th Cir. 1999). In this case, Plaintiff states that Defendant Mitchell is responsible for developing and implementing facility mail procedure with policy. Assuming that Plaintiff's claim that he wrote Beck about his concerns, there is no indication that any inaction on Beck's part has resulted in Plaintiff's alleged inability to communicate with his brother or his sons. Therefore, Plaintiff's claim against Beck is DISMISSED as frivolous.

### (6) Retaliation for Filing a Grievance and Plaintiff Moved to Another Cell

Plaintiff claims he filed a grievance against Defendant Mitchell on July 31, 2007 concerning freedom of speech. He claims that on that same day he "noticed how the staff was giv[ing] [him] this look and [he] knew that the[re] was going to be some retaliation." Plaintiff alleges that at about 10:00 p.m., he knew Defendant Mitchell was communicating with several officers, John Doe and David Stamey, in Dormitory "B,". He claims that between 11:00 p.m. and 12:00 p.m., John Doe and Stamey came to search his cell. Plaintiff avers that he believes Defendant Mitchell had his cell searched because filed the grievance.

As stated above, for an inmate to state a viable claim of retaliation under § 1983, the alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory action itself must violate such right. See Adams, 40 F.3d at 75. Not only is Plaintiff's claim against Defendant Mitchell conclusory, he has failed to show that any constitutionally protected right was infringed. Plaintiff has no constitutional right to participate in the grievance process. Id. Nor, does he have any constitutional right with regard to the cell search. See Hudson, 468 U.S. at 525-26. Therefore, Plaintiff retaliation claim against Defendant Mitchell for the July 31,

10

2007 cell search is DISMISSED as frivolous.

Following the search of his cell, a disciplinary report was written charging Plaintiff with misuse of the mail. Plaintiff was charged because a letter that he wrote to another inmate was found in his cell. He claims the letter was not addressed to the inmate and had not been put in the mail. The next day, on August 1, 2007, Plaintiff was moved out of his dorm to another dorm. Again Plaintiff claims this action was taken in retaliation. This claim of retaliation is conclusory, and inmates do not have any constitutional rights with regard to housing. See Meachum v. Fano, 427 U.S. 215, 223-24 (1976). Therefore, this claim of retaliation against Defendants Mitchell, Stamey, and Doe, as well as his claim against Defendant Beck for failing to respond to a letter Plaintiff sent him regarding this matter, are DISMISSED as frivolous.

### (7) Discrimination in Housing at Johnston

Plaintiff claims that on November 24, 2006, Defendant Herring ordered Plaintiff to pack his property and move to another dorm, "without explanation." Plaintiff claims that he was moved because Defendant Herring did not want Plaintiff to be housed in the same dorm as inmate Garland Lail. In response to Plaintiff's grievance, it was stated that Defendant Herring moved Plaintiff because he had received several notes and letters from inmates that were threatening toward Plaintiff. Plaintiff claims there had been no threats against him and that this was only an excuse Defendant Herring could use to cover up his "intentional misconduct." Plaintiff alleges he spoke with Defendants Vinson and Webster concerning this "discrimination" in housing but they were "deliberate indifference to correct the violation." Plaintiff also names Defendants Thompson, and Carroll for their alleged involvement in this issue. Plaintiff apparently bases his claim of discrimination on the fact that two other inmates were allowed to remain housed in the dorm from

11

which Plaintiff was removed.

Plaintiff's claim of discrimination is housing is conclusory and unsupported by the facts. Plaintiff has failed to show that he is "similarly situated" to those other inmates who are allowed to remain in the dorm. See Plyler, 457 U.S. at 216. In his grievance concerning this move, Plaintiff states "[n]ow that I know why I had to be move[d] was because inmates has file grievance on issues that is not true. It was stated that I was to have had sexual contact with Garland Lail in the shower and other issue." Although Plaintiff claims his inquiries led him to believe no threats have been made against him, his own statements indicate that he knew the reasons for his move to another dorm and that there was some truth the Herrings statements concerning Plaintiff's move. Therefore, Plaintiff's claim of discrimination in housing is DISMISSED as frivolous.

### (8) Denied Due Process at Disciplinary Hearing at Eastern

Plaintiff claims that on September 7, 2005, Defendant Dunn gave him a Notice of Rights concerning the disciplinary charge that Plaintiff was "'engaged in a sexual act with another inmate in a cell that he was not assigned to him on September 4, 2005." Plaintiff claims his request for a witness was denied by Defendant Taylor and that the notice failed to identify the other person involved on the sex act. Plaintiff states that this was a violation of due process.

In this case, Plaintiff's claims concerning the violation of his due process rights during disciplinary proceedings is barred by the decision in Edwards v. Balisok, 520 U.S. 641 (1997). A prisoner cannot bring a § 1983 action challenging a disciplinary proceeding resulting in the loss of good-time credits if the possible relief would necessarily imply the invalidity of the punishment imposed, unless the disciplinary action was previously invalidated. See id. at 646-47. Failure to allow Plaintiff to have witness testimony in his defense is the kind of procedural defect that would

imply the invalidity of the disciplinary action. See id. at 647. Because this disciplinary action has not been invalidated, Plaintiff's claim that his due process rights were violated during the disciplinary hearing is DISMISSED without prejudice.

C.

In conclusion, Plaintiff's claim No. 5 against Defendant Mitchell alleging he is denied any communication with his sons or with his brother is not clearly frivolous; Plaintiff's claims 1, 2, 3, 4, the remaining allegations is No.5, 6, and 7 are DISMISSED as frivolous; and claim No. 8 is DISMISSED without prejudice.

II.

Also before the court is Plaintiff's Motion to Amend. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend his pleading once as a matter of course at any time before the responsive pleading is served. Therefore, Plaintiff's motion to amend is ALLOWED.

However, the Motion to Amend is also subject to a frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B). In his motion to amend, Plaintiff seeks to add fourteen John/Jane Does, who are the supervisors of many of the Defendants named in the original complaint. Since the claims against the Defendants named in the original complaint who are referenced in the amended complaint have been dismissed, Plaintiff's claims against these supervisory official have no basis and are hereby DISMISSED as frivolous.

III.

Plaintiff has also filed two motions for appointment of counsel. Because Plaintiff is a state inmate, his claim which has survived frivolity will be referred to North Carolina Prisoner Legal Services ("NCPLS") for an investigation pursuant to the Eastern District Prisoner Litigation Plan.

13

Therefore, Plaintiff's motions for appointment of counsel are DENIED.

IV.

Plaintiff has filed a Motion for a Temporary Restraining Order, Motion for Preliminary Injunction. In his motion for injunctive relief, Plaintiff seeks: (1) to stop Defendant Mitchell or other Superintendents from tampering with or mishandling his mail; (2) to have Defeendants provide policy concerning inmate to inmate correspondence; (3) to order that there be no retaliation or other punishment taken against him during this proceeding; (4) to order that he receive all necessary materials, postage, services, and copies of documents; and (5) to order Defendants Beck and Bennett to transfer him to a facility in the Eastern District of North Carolina.

When considering a request for injunctive relief, a court must consider: "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271 (4th Cir. 2002) (quotation omitted); North Carolina State Ports Authority v. Dart Containerline Co. Ltd., 592 F.2d 749, 750 (4th Cir. 1979); Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc., 550 F.2d 189, 193-95 (4th Cir. 1977). Plaintiff has failed to demonstrate a likelihood of irreparable harm, or any of the other requirements necessary to obtain injunctive relief. Therefore, plaintiff's motion for a temporary restraining order is DENIED.

V.

Plaintiff has filed several discovery motions with the court. The court generally does not become involved in discovery. Rather, it is the responsibility of the party seeking discovery to serve

his request on the party from whom discovery is sought. In this case, the Defendant has not been served with Plaintiff's complaint, therefore discovery is premature. Even, if Plaintiff serves his discovery requests he is cautioned that such requests should be confined to inquiries concerning the only issue remaining following the frivolity review. Therefore, Plaintiff's Motion for Production of Documents (D.E. #7), and Motion to Compel Discovery (D.E. # 14) are DENIED.

VI.

Plaintiff has filed a motion for entry of default for failure of Defendants to file an answer or otherwise plead. Defendants have not been served with Plaintiff's complaint. Therefore, the motion for default judgment is DENIED.

VII.

Plaintiff filed a document captioned "Motion for Order" in which he requests that the court: (1) deny Defendant's motion for summary judgment (none has been filed); (2) order Defendants to allow him inmate-to-inmate correspondence; (3) order Defendants to give him the location of other inmates; (4) order Defendants to allow Plaintiff to go to other dorms to obtain affidavits from other inmates at Mountain View; and (5) to grant a continuance so he can get affidavits for other inmates. Plaintiff's motion is DENIED.

VIII.

Plaintiff filed a document captioned "Motion in Limine" referring to Rule 403 of the Federal Rules of Evidence in which he apparently seeks to have the seriousness of the crime for which he was convicted as well as his disciplinary actions excluded from evidence in this case. He also seeks to have witnesses and other evidence excluded. Even if this motion was properly before the court,

it is premature and is hereby DENIED.

IX.

In conclusion, (1) Plaintiff's claims 1, 2, 3, 4, 6, and 7 are DISMISSED as frivolous; (2) all of claim 5 is DISMISSED as frivolous, except for Plaintiff's claim that Defendant Mitchell prohibited him from any communication with his brother and his son; (3) claim 8 is DISMISSED without prejudice; (4) Plaintiff's motions for appointment of counsel (D.E. #3 and #17), motion for a temporary restraining order/preliminary injunction (D.E. #4), motions for production of documents (D.E. #7) and to compel (D.E. #14), motion for entry of default judgment (D.E. #11), motion for order (D.E. #12), and motion in limine (D.E. #16) are DENIED; and (4) Plaintiff's motion to amend (D.E. # 13) is ALLOWED, but the claims in the motion are DISMISSED.

Accordingly, the Clerk is DIRECTED to continue management of the non-frivolous portion of claim 5 in which Plaintiff alleges Defendant Mitchell prohibited him from having any communication with his brother or his son.

SO ORDERED this 17th day of March 2008.

MALCOLM J. HOWARD
Senior United States District Judge

nem

16